Tara SEGAL, Plaintiff

v.

Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant.

No. Civ.A. 04–2589.

United States District Court, E.D. Pennsylvania.

Oct. 29, 2004.

Tara Segal, Philadelphia, PA, Plaintiff Pro Se.

Michael Patrick Boyle, Philadelphia, PA, for Plaintiff.

Eda Giusti, Social Security Administration, Philadelphia, PA, for Defendant.

### MEMORANDUM & ORDER

KATZ, Senior District Judge.

Plaintiff Tara Segal brings suit against Jo Anne B. Barnhart, in her capacity as Commissioner of the Social Security Administration, seeking review of an administrative denial of disability benefits. Plaintiff argues that the denial issued by an Administrative Law Judge ("ALJ") was not supported by substantial evidence and therefore should be reversed. Now before the court is Plaintiff's motion for summary judgment, or, in the alternative, Plaintiff's motion for remand. This court has jurisdiction over this appeal pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). For the reasons set forth below, Plaintiff's motion for summary judgment is granted.

**Factual Background**

Plaintiff is a 34-year-old female with a high school equivalency degree, currently on welfare assistance. She is 5 feet, 8 1/2 inches tall and weighs approximately 215 pounds. Since a motor vehicle accident in April 1999 and a fire which destroyed her home in March 2000, she has experienced significant physical, mental and emotional problems. As a result, she has suffered a loss in ability to perform daily personal and household tasks, meet employer expectations and enjoy her family, friends and own life.

Plaintiff testified to a number of physical ailments, including high blood pressure, high cholesterol, ulcerative colitis, gallstones, obesity, and a bulging disc at the base of her lumbar. She also experiences debilitating migraine headaches, leading to

blurred vision. In addition, poor circulation in her legs can only be alleviated by lying down up to seven times a day for half an hour to an hour. Further, her spastic colon requires at least eight bathroom trips a day. These conditions are exacerbated by stress, sitting or standing for extended periods of time, and walking. She has been on six to eight prescription medications at a time.

Prior to the 1999 motor vehicle accident and the 2000 fire, Plaintiff enjoyed socializing with family and friends, playing with her three children and horseback riding. Since then, she struggles to shower, wash dishes or pick up her youngest son. She came to rely on her children and her husband, from whom she is now separated, to take care of daily tasks. She rarely goes out for fear that she will not be able to reach a bathroom as quickly as may be necessary. Her son mows the lawn and helps with yard work, because Plaintiff is unable to do such chores. She has difficulty sleeping due to pain and the need to go to the bathroom. Climbing more than one flight of stairs winds her, and she can no longer walk to her sons' sports games.

Plaintiff sought treatment from three physicians for her physical symptoms. Dr. Gorti authorized gallbladder removal; Dr. Kasper ordered a colonoscopy and prescribed medication for Plaintiff's spastic colon; Dr. Banka diagnosed a limited range of motion in Plaintiff's neck in conjunction with the migraine headaches, which she assessed as incapacitating.

Plaintiff's physical conditions have contributed to mental and emotional difficulties as well. She stated she suffers from anxiety, depression, and insomnia. She does not drive, shop or use public transportation without being accompanied by a friend or relative, in order to avoid panic attacks. She has experienced crying spells and finds her temper volatile. As a result, Dr. Gorti prescribed medications for depression, panic attacks and insomnia.

**Procedural Background**

On September 14, 2001 Plaintiff filed an application for benefits under Title XVI of the Social Security Act, alleging she had been disabled since August 1, 2000. The Social Security Commissioner's state agency denied her application, and Plaintiff requested a hearing before an ALJ, which was held on May 5, 2003. In an August 25, 2003 opinion, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council upheld the ALJ's decision in decision dated April 19, 2004. She filed suit in this court seeking judicial review of the Commissioner's decision.

**Discussion**

■ In reviewing an administrative decision denying benefits in a social security matter, the court must uphold any factual determination made by the ALJ supported by "substantial evidence." 42 U.S.C. § 405(g). While substantial evidence is not a "large or significant amount of evidence," it is "more than a mere scintilla." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted); *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations and quotations omitted). Rather, it is such relevant evidence that would be sufficient to support a reasonable conclusion. *Pierce,* 487 U.S. at 565, 108 S.Ct. 2541. In addition to having substantial evidence review of an ALF's findings of fact, this court retains plenary review over the ALJ's application of legal principles. *Krysztoforski v. Chater,* 55 F.3d 857, 858 (3d Cir.1995). As such, even if a decision made by an ALJ is supported by substantial evidence, this court can overturn that decision if it finds that it was based upon incorrect legal stan-

dards. *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir.1983).

According to C.F.R. §§ 404.1520(e), 416.920(e), the ALJ must perform a five step analysis in reviewing applications for disability benefits under the Social Security Act. The steps are, in short, (1) whether claimant is engaged in a substantial gainful activity; (2) if not, whether the claimant suffers from a "severe impairment;" (3) if so, whether that impairment is one of those listed in the relevant regulatory appendix; (4) if not, whether the impaired claimant retains the residual functional capacity to return to perform her past relevant work; and (5) if not, whether there is other work that the impaired claimant can do, taking into account her capacity, age, available jobs, and work experience. *See Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir.1999).

■ In his decision issued after the second hearing, the ALJ agreed that there was no evidence that Plaintiff had worked beyond her alleged disability onset date; thus step one was resolved in her favor. The ALJ then stated that Plaintiff's chronic ulcerative colitis, spastic colon and migraines "more than minimally impact[ed] on her ability to perform work activity," and so met the definition of "severe" impairments under the Social Security Act. *Record* at 17. However, the ALJ also found that the claimant's anxiety, depression, panic attacks and poor circulation of the legs "do not more than minimally impact her ability to perform work activity," and thus were not considered "severe." *Record* at 18.

Since the ALJ found Plaintiff's chronic ulcerative colitis, spastic colon and migraines to be severe, he was required to determine whether these impairments meet or equal a listed impairment in Appendix 1, Subpart P, Regulations No. 4 (20 C.F.R. § 404.1520(d)). The ALJ compared Plaintiff's impairments to Listings

5.06 and Section 11.00 and found that they "did not meet listing level severity." *Id.* Even considering the chronic ulcerative colitis, spastic colon and migraines in conjunction with Plaintiff's anxiety, depression, panic attacks and poor circulation of the legs, the ALJ stated that "a listed impairment is not met." *Id.*

Given this determination, the ALJ then considered whether Plaintiff could return to her past relevant work. He decided that she could, citing a vocational expert's trial testimony. Plaintiff's past work as a packer/stocker was considered medium, unskilled work; her employment as a pet store sales clerk and jewelry sales clerk was light, semi-skilled work; and her job as an animal caretaker was medium, semi-skilled work. The ALJ's opinion states that the vocational expert opined that "a person who was able to perform light exertional work would be able to return to her work as a sales clerk." *Id.* On these grounds, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act, and denied her benefits.

■ This court finds that the ALJ erred by failing to find Plaintiff suffered from impairments of listing severity. The ALJ must take into consideration all impairments in combination, when determining whether they equal a listing. *Watson v. Massanari*, 2001 WL 1160036 (E.D.Pa. 2001). An impairment is defined as severe when it significantly limits one's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling. 20 C.F.R. § 416.921(b)(1). The ALJ gave no weight to the MRI results that diagnosed Plaintiff's bulging disc at the base of her spine, a condition which would impact her ability to walk, sit, lift

and carry at work, even performing light exertional work as a sales clerk.

In addition, the ALJ did not discuss Plaintiff's obesity in terms of its possible impact on her ability to perform the above activities, in combination with her other medical conditions. Social Security rulings 00–3p and 02–01p state that obesity can limit both exertional functioning, such as a walking and standing, and nonexertional functioning such as stooping. Plaintiff's Body Mass Index (BMI) is around 32, within the range of medical obesity. The ALJ failed to consider the impact of obesity in combination with other impairments when determining overall severity, as required by the Social Security Rulings.

Finally, the ALJ disregarded Plaintiff's mental health problems, stating that "there is no record of [panic] attacks or that she has had any treatment with a psychiatrist or counselor. Someone who experiences 2 panic attacks a week would seek treatment." *Record* at 19. In fact, Plaintiff did report panic attacks to her family doctor, was prescribed anti-anxiety medication by Dr. Gorti, and testified that she was indeed seeking psychiatric help but was placed on a waiting list because she could not afford to pay for private treatment. Plaintiff's lack of such treatment is not sufficient to infer an impairment did not exist. *See Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir.2003).

The Third Circuit has held that the ALJ "must give some indication of the evidence which he rejects and his reasons for discounting such evidence." *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119 (3d Cir.2000). *See also Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir.1999). Here the ALJ did not only fail to explain his rejection of evidence; he failed to address such evidence. The ALJ's failure to consider Plaintiff's impairments in combination when determining whether they equal a listing results in an error of law. *Caballero v. Barnhart*, 2003 WL 22594256 (E.D.Pa.2003).

This court also finds that the ALJ failed to show substantial evidence that Plaintiff could return to her prior relevant work. The ALJ stated that the vocational expert indicated Plaintiff could do so. But at trial, the vocational expert explicitly remarked that an individual such as Plaintiff could not return and do any of the past relevant work she had done. *Record* at 266. Nor was the vocational expert aware of any job that would exist for an individual such as Plaintiff in the local, national or regional economy in the United States. *Id.*

Upon review of the medical opinions and the testimony reproduced in the record, this court finds that the ALJ's decision is not supportable by reasonable evidence. This decision of the ALJ is therefore reversed.

### ORDER

**AND NOW**, this    day of October, 2004, upon consideration of the parties' cross motions for summary judgment, it is hereby **ORDERED** that plaintiff's motion is **GRANTED** and defendant's motion is **DENIED**. The case is **REMANDED** to the Commissioner for a calculation of award and benefits.